**Franklin T. Bruce YOUNG, Appellant,**

v.

**BUREAU OF INDIAN AFFAIRS, DEPARTMENT OF INTERIOR, UNITED STATES GOVERNMENT, Appellee.**

No. 82–1319.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 16, 1982.

Decided Dec. 14, 1982.

Philip N. Hogen, U.S. Atty., John J. Ulrich, Asst. U.S. Atty., Sioux Falls, S.D., for appellee.

J.M. Grossenburg, Day, Grossenburg & Whiting, Winner, S.D., and Charles Rick Johnson, Johnson, Johnson & Eklund, Gregory, S.D., for appellant.

Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

BRIGHT, Circuit Judge.

Franklin T. Bruce Young sued the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and §§ 2671–2680 (1976), for injuries he sustained when a fifty-ton Terex water wagon ran over Young while he attempted to repair the unit. The district court[1] entered a judgment of dismissal and Young appeals.

---

1. The Honorable Donald J. Porter, United States District Judge for the District of South Dakota.

Young asserts on appeal that the district court erred in (1) finding that the Government did not know Young was intoxicated when it loaned him the water wagon, and (2) applying the doctrines of contributory negligence and assumption of the risk to a cause of action for negligent entrustment of a highly dangerous chattel to an intoxicated plaintiff. We affirm.

Young in his complaint alleged that his injuries had resulted from the Government negligently entrusting the vehicle to him while he was intoxicated. The district court held that there had been no negligent entrustment because the supervisor at the road department of the Bureau of Indian Affairs (BIA) neither knew nor should have known of Young's alleged intoxication when they turned over the water wagon to Young. The court further found that Young's own negligence or his assumption of the risk proximately caused the accident and Young's injuries.

On our review, we determine that the record establishes an evidentiary basis for the district court's finding that BIA representatives did not know, nor should have known, of Young's alleged intoxication. Thus, the finding that no negligent entrustment ensued is not clearly erroneous. Because we uphold the district court's judgment on that basis, we need not reach the issues of Young's contributory negligence or assumption of the risk.

## I. *Background.*

From 1975 to 1978, Young served as an intermittent employee of the road department of the BIA in Rosebud, South Dakota. While working for the BIA, Young had frequently operated equipment similar to a Terex water wagon, and had driven a Terex water wagon several times. Additionally, Young received some training while at college in the use of heavy equipment.

On August 25, 1978, the Rosebud Sioux Tribe hired Young to operate a water wagon during the tribal fair to control the dust on the fairgrounds. Young picked up the water wagon from the BIA road department at about 5:00 p.m., pursuant to an agreement between the Tribe and the BIA. While Young was operating the water wagon, the accelerator rod underneath the accelerator pad broke, and the machine lost power. Young crawled underneath the machine to repair it. While he was under the water wagon, the engine revved up, and the machine moved, striking and severely injuring Young.

On admission to the hospital, Young's attendants performed an alcohol blood test on Young. The results of the test showed a blood alcohol concentration of 0.22, more than double the concentration of 0.10 needed to establish intoxication under South Dakota law. Young testified at trial that he had been drinking the night before and during the day of the accident.

## II. *Discussion.*

Young sought recovery under a negligent entrustment theory based upon the Restatement (Second) of Torts (1965), § 390, which provides that

> [o]ne who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

The district court did not dispute the validity of this rule, but found "that plaintiff was not so intoxicated on the day of the accident as to put those at the BIA road shop on notice of his incompetence to operate the water wagon." Young contends on appeal that this finding of fact is clearly erroneous. We disagree.

The district court observed that "proof here of plaintiff's intoxication is equivocal." The most direct evidence that anyone at the BIA shop knew that Young was intoxicated came from George Guereau. Guereau was the chief mechanic at the road shop at the time of the accident. Gereau testified at his deposition, which he affirmed at trial, as follows:

Q. \* \* \* "Did he appear to be drinking or under the influence of alcohol?" Answer: "I would have to say yes." \* \* \*

\*    \*    \*    \*    \*    \*

"Q. Do you have an opinion as to whether or not he was physically able to drive the Terex machine at that time?" "A. I think he was physically able to drive it, but if I would have been, if I was in the position to loan it to him, I think I would not have." \* \* \*

Guereau did not further explain this last answer. He testified, however, that it was not up to him, but rather to his superiors, to loan the Terex machine. Moreover, the record is devoid of evidence that Guereau reported his misgivings to his supervisors.

Gerald Stoick, a BIA highway engineer and the supervisor of heavy equipment at Rosebud, testified at trial that Young had a good work record, and had never violated the policy against drinking on the job. Stoick also testified that he had seen Young on the day of the accident, and that Young had not appeared intoxicated to him. Stoick testified as follows:

Q. Did you talk to him?

A. No.

Q. What was his appearance?

A. He looked disgruntled. He was kind of disgusted with something and I understood the reason why was because there was none of us there around to help him fill the water wagon and that is quite a task with the hose and getting the water filled in the machine and I just understood that he was kind of unhappy about that.

Q. Did he appear to be intoxicated to you?

A. No.

Q. Did you know whether in fact he had been drinking on that date?

A. No.

Stoick also testified at trial that no one had told him that Young had been drinking.

Donald Frash, a forensic chemist, also testified at trial. Frash's testimony was inconclusive. He stated that intoxication would normally be recognizable in a person who, like Young on the day of the accident, has a 0.22 blood alcohol concentration. Frash also stated, however, that depending on the drinking history of the individual, it is possible for an individual with a high blood alcohol concentration to appear sober.

Finally, we note that the record shows that Young was apparently not so intoxicated that he could not conduct such purposeful activities as driving and attempting to repair the water wagon. Moreover, the evidence indicates that Young drank intoxicants after obtaining the vehicle from the BIA shop.

The record reveals some evidence to support the district court's conclusion that the responsible person at the BIA road department neither knew nor had reason to know of Young's intoxication when entrusting Young with the water wagon. We recognize that a factfinder could have arrived at a contrary conclusion. Nevertheless, we cannot characterize the district court's finding as clearly erroneous. Thus, we must affirm.